Case number 19-30-16 Eastern Arkansas, Turning Point USA at Arkansas State University, et al. v. Ron Rhodes, et al. Mr. Shandoval. Good morning, your honors. May it please the court, Chris Shandoval with Alliance Defending Freedom on behalf of the appellants in this appeal. I've asked to reserve three minutes of time for rebuttal. This case involves the application of two clearly established constitutional rules as applied to my client Ashlyn Hoggard. Ashlyn is a former student at Arkansas State University whose First Amendment rights were violated in two ways when she attempted to speak on her college campus to recruit members for her student group and was shut down and had the police called on her because she failed to ask prior permission from the school 24 hours in advance to speak on campus and also because the enforcement officials had unbridled discretion to decide whether or not to grant her an exception to allow her to continue speaking and they refused to exercise that discretion to allow her to speak. Counsel, in that regard, what were the terms of the patio policy with regard to advanced requests to table? Well, the terms of the patio policy were entirely dependent on Mitch Rouse's deposition testimony. Those terms are never written down anywhere in any written policies and she was given multiple opportunities to state what those terms are. But what she claims the terms were is that they had developed an unwritten rule limiting the use of that space to registered student organizations. And, of course, the policies as written, because they gave unbridled discretion to enforcement officials to determine whether or not to allow students to speak in areas on campus, in any area on campus, those policies allowed them to create that unwritten policy. But in this appeal, the problem with the policy... Counsel, given what the FOCUS Act mooted of what you hoped and expected to litigate at the outset of this case, tell me precisely what the First Amendment as applied claim that we're reviewing is. So there are two aspects of that claim, your honor, that are before this court. The first is the claim that state clearly established rights... We're talking about specific defendants. Don't say state officials. Of course, your honor. First, as to the members of the Board of Trustees, they're responsible for approving and maintaining unconstitutional policies that did two things that were challenging... What's the violation as to this specific claim? The violation is that she was not allowed to impose on her small group of speakers. And the second violation is the unbridled discretion that was exercised that refused to allow her to speak in either the free speech area or the area outside of the student union. So we're no longer on appeal contesting whether or not that paved area outside the student union is a limited public forum. We're no longer contesting whether or not... Just a minute. The policy... You can't... This is not a facial challenge to the policy. That's correct, your honor. This is what happened to Ms. Hoggard. Yes, your honor. There were specific people involved in that. And as I understand that my limited understanding of the record is that none of the people who were on the scene personally responsible for the incident that day are ever. The people who were on the scene that day are not defendants. But the people who were personally responsible for the unconstitutional policies that were applied that day are defendants. And here's why this case is different. Wait, wait, wait. That gets you nowhere. Respectfully, your honor, I disagree. So it sounds like you're raising concerns... Not if the people who applied... If the people who misapplied the policy, that doesn't make the policymaker liable. With respect, your honor, the policy was not misapplied. The policy required a prior restraining... You just told Judge Graz you can't tell what the policy is. So the policy's not in play here. It was the actions of Ms. Rouse and Ms. Ponder and eventually the campus police officer. They were the ones who were responsible for Ms. Hoggart not getting to set up her table in one place or the other that day, right? No, your honor. They were responsible, but not the only defendants responsible. And here's the reason for that. What's your best case for what I'm hearing is responding at superior liability. What's your best Supreme Court case for establishing that that's not what we're talking about? Well, I can give you, your honor, eight circuit cases, published cases... No, I want the Supreme Court first. Well, I don't know that the Supreme Court has resolved this issue, but this court has in clearly published opinion. The second panel versus Brown talks about these issues all over the place. Your honor, here's why those cases are all distinguishable. Those cases involve rogue enforcement officials applying a policy that as written is constitutional, but applying it in a way that is unconstitutional. What we have in this case is policies that as written are unconstitutional. And therefore they allow enforcement officials to enforce those unconstitutional policies, but the personal responsibility for the policies themselves goes all the way back to the trustees members. And I'll give you the course... Now, wait a minute. Now you're just distinguishing cases you don't like. I asked you for the best in your favor. The best cases in my favor, your honor, are Messimer versus Lockhart, this court's decision in 1983 dealing with a director of the State Department of Corrections who was held personally liable for policies that a warden, a subordinate, enacted on the basis that he had the authority to change those unconstitutional policies and he failed to. That's the best case as the trustees members. The best case as to Stripling and SPAC, the enforcement officials for enforcing those policies, is this court's decision in Bonner versus Outlaw decided in 2009. In that case, this court held that there was a material disputed issue of fact as to whether or not the defendant was personally liable because this court said the plaintiff, quote, may be able to prove that the defendant was personally involved in creating, applying, or interpreting a policy that failed to adhere to constitutional standards. So when the policy itself as written is unconstitutional... Okay. Well, what's your... Tell me what facts in the record create that material dispute as to Stripling and SPAC or SPAC. Well, we're not arguing that there's actually a material dispute. The record clearly establishes that Stripling was responsible for making sure the policies were implemented and enforced. His subordinate was Ms. SPAC. She was also responsible for that. And then, of course, they exercised that throughout. So all of them were responsible for implementing a policy that, as written, was unconstitutional because it imposed a prior restraint on even small groups of peaceful speakers with seven circuits upheld as unconstitutional. Did the district court decide the facial unconstitutional argument you're making? We're not making a facial unconstitutional argument, Your Honor. We're arguing... Wait a minute. You just asserted that it's unconstitutional on its face and, therefore, there's liability for its enforcement. It's unconstitutional... That's what you said. That's a facial challenge. When a unconstitutional policy that's unconstitutional as written is applied against individual defendants to violate their constitutional rights, then that individual, as happened here, then that defendant can raise an as-applied challenge... Okay. But what did Judge Holmes decide with respect to your assertion that this is unconstitutional on its face as written? So we're not asserting that on appeal. And below, we agreed that the facial challenge has been mooted looking forward. So we're just arguing about what happened to Ms. Hoggart in this case. Yes, but you're appealing from an adverse decision. How did the district court rule on that question? The district court ruled that the claims for injunctive and declaratory relief are moot, the facial claims are moot, and that what we have left are the as-applied claims for damages, for nominal damages and compensatory damages, which we are continuing to assert in this appeal. And so the speech policies... But wait a minute. It also, didn't it grant summary judgment on the First Amendment as-applied claims? It did grant summary judgment. And you're saying the essence of the claim is that the policy is unconstitutional on its face, and therefore as written, and therefore it couldn't be constitutionally applied. That's your argument. How did Judge Holmes resolve that argument? Judge Holmes resolved the argument by assuming without deciding that the trustees members were personally involved, and then holding that they were entitled to qualified immunity. We think it's correct to conclude that they were personally involved because they're responsible for unconstitutional policies as written, were unconstitutional, and were enforced against my skipped by the constitutional violation and ruled only on clearly established. Yes, Your Honor. That's what we're saying. All right. And all you want to argue is the constitutional violation. I want to hear about clearly established. It isn't established by a 1983 case, that's for sure. The Supreme Court has gone eons beyond the clearly established jurisprudence in 1983. Oh, with respect, Your Honor, you don't need a case arising in a qualified immunity context to prove that a constitutional rule is clearly established. And in this instance, what we have dating all the way back 75 years... Oh, my goodness. What case since 2015, the Supreme Court's probably had eight or 10. What cases instructing us to enforce the is it, you know, you don't need it. Clearly, every constitutional rule is clearly established per se. No, Your Honor. That's not what I just said. Our argument is that... Clarify. That was what I heard. I meant clarify. Well, my apologies for being unclear, Your Honor. Our argument is that you look to see whether or not the law is clearly established. You look to other First Amendment cases in this context. You don't have to look for qualified immunity cases. You look for First Amendment cases determine whether or not that the rule that we're alleging is clearly established through a robust consensus of authority. In this case, we're alleging two clearly established rules. The first is a clearly established rule that a prior restraint imposed on a small group of peaceful speakers is unconstitutional. That's grounded in the Supreme Court's decision in Thomas v. Collins. It's been embraced and applied by seven circuits, including this court and Douglas v. Brown now. Given that clearly established rule, the defendants here, all of the defendants, the trustees and the enforcement officials, were all responsible and were not entitled to qualified immunity at reviling that clearly established rule and preventing Ashland from moving to the free speech zone to speak because she hadn't obtained prior permission. The second clearly established rule that we are asserting is the clearly established rule prohibiting a grant of unbridled discretion to enforcement officials in enforcing a restriction on speech. That clearly established rule dates all the way back to the Supreme Court's decision in Cox v. the state of Louisiana. It's been embraced and applied by five circuits that we cite in our brief, including by this court in the case of Lewis v. Wilson involving a license plate. What all those cases have held is that it does not matter the type of forum you're dealing with if you allow for unbridled discretion. The problem with that is it creates an opportunity for enforcement officials to discriminate based on viewpoint. Therefore, regardless of the type of forum, therefore, Ball is completely the opposite. Ball just helps to establish the type of forum we had in the heritage plaza. What counts for purposes of this appeal is that unbridled discretion that allowed enforcement officials to enforce their policies arbitrarily. They conceded they previously and they were willing to make exceptions for some groups, but they wouldn't make an exception for this group. That makes this case squarely. Counsel, let me ask you. Explain your position on whether you are making a viewpoint discrimination or content-based claim. That's unclear from the record and unclear from the brief, frankly. Clarify that for us once and for all now, please. Yes, your honor. I'm happy to do so. We are not making a claim that we have evidence that there was viewpoint-based discrimination applied against my client. We certainly believe that that's what happened in this case, but our claim is not based on us showing that there's evidence that it occurred. All that's required under the unbridled discretion doctrine is that there's an opportunity for that viewpoint-based discrimination to occur, and that opportunity, coupled with the arbitrary enforcement that we see in the record in this case that we've cited to in our brief, is what makes the policies unconstitutional. It makes this case squarely within the confines of the Supreme Court's decision 55 years ago in Cox v. State of Louisiana, where the Supreme Court in that case was dealing with a peaceful protester on public sidewalks who was convicted under a statute prohibiting obstructing passages, and what the Supreme Court said in that case is by allowing for some exceptions, but not allowing for an exception for the speaker there, that violated his right to be free from unbridled discretion and arbitrary enforcement and violated his first amendment right. I'd like to ask you a follow-up question, if I could, on the neutrality of this policy. I noticed on page 21 of your brief, Ms. Hoggar challenges the policy as applied to her as an individual. Is this policy neutral? As between individuals and groups? The policy does not require neutrality, does not bridle the discretion of enforcement officials in a way that they do truly have to be neutral. My question, counsel, is could she as an individual have engaged in tabling there? Didn't the policy require that she be a member of a group, and isn't that a prior restraint? It is a prior restraint on her, and the alleged unwritten policy that they've cited is that she should have been a part of a group. The problem is that unwritten policy is nowhere in the written policies. As a result, it allowed Ms. Rouse to enforce it arbitrarily. She testified, we would allow some groups to stay here and table. I had the discretion to decide who could stay and who couldn't, and I decided not to allow this group to stay. That makes that unbridled discretion, the exercise of unbridled discretion, unconstitutional as applied to my clients who were not allowed to speak anywhere on her own college campus. I see I'm well into my rebuttal. I'll reserve the remaining few seconds unless the court has further questions from me. I do have a question. Can we find a constitutional violation but not find the appellees liable? In other words, can we find a constitutional violation but still find that the appellees are entitled to qualified immunity? Yes, Your Honor. The Supreme Court has ordered, and the amicus brief filed by the Cato Institute urges this court, and we would do the same, to at least rule on the constitutionality of prior restraints on speakers on college campuses and unbridled discretion and hold that those policies are unconstitutional, and then separately the court could reach the question of whether those constitutional rules are clearly established, which we think, given this court's binding case law and robust consensus, they are. Thank you. Thank you, Your Honor. Unless the court has further questions, I'll rest on my brief and ask the court to reverse the decision below. Very good. Thank you. Mr. Beaulieu. May it please the court, good morning, Your Honors. My name is Jeff Breer. I'm privileged to represent the Arkansas State University defendants in this lawsuit. Some of the initial questions from Judge Loken go directly to the important points in the appeal, and that is that this case is limited to the claims of Ms. Hoggart against the Board of Trustees and two of its administrators, Dr. Spak and Dr. Stripling. It is clear from the record that on the day in question, others were involved who've been mentioned here, such as Ms. Rouse and the officer, Ms. Ponder and Ms. Perry, but those individuals are not parties. They don't have claims, and their actions are not the subject of the appeal. Ms. Hoggart did set up in an area that had been designated specifically by Arkansas State for the RSOs, the Registered Student Organizations, and for the university departments. Counsel, let me ask you a question about that. Is the right to free speech under the Constitution a group right or an individual right? It's an individual right, Your Honor. So isn't this policy discriminatory as between individuals and groups? It is not, Your Honor. And there's a prior restraint, is there not, on being a member of a group? It is not, Your Honor, and the reason you're speaking of the RSO policy, which comes under the limited forum analysis as agreed by counsel in his opening comments, and the restraint need only be reasonable in that analysis, and we have a reasonable situation here, and that is... Well, reasonable and viewpoint neutral. That's correct, Your Honor. That is true. So the point is we're talking time, place, and manner, right? We're talking time, place, and manner reasonableness. That's correct, Your Honor, and what we have here is that the university has permission to designate an area. This is a limited forum by designation for certain opportunities of groups. They have selected those RSOs and university departments. That is a reasonable approach because it blends with the purpose of Heritage Plaza at the Student Union of Arkansas State's campus. Well, so if Ms. Haggard wanted to stand out there by herself without a table and have a stand or just have a discussion with people, does the policy prohibit that? Your Honor, the policy does not prohibit anyone from going through that area. What it prohibits is what she did that day, which was setting up a table for the specific purpose of promoting an organization of which she was not an RSO, and she agreed to that. Are there any circumstances under the policy under which Ms. Haggard could have a discussion about Turning Point USA, about limited government, about big approval? In the Heritage Plaza arena, Judge, is that the question? There or a free expression area or anywhere on campus? Well, Your Honor, the free expression areas in this Heritage Plaza is not one of those. She was not in a freedom of expression area as defined by that policy. No, I understand that, but let's focus on my question about does the policy essentially prohibit her from having a conversation about limited government or big government or Turning Point on campus without previously getting some sort of permission? The policy does not prohibit Ms. Haggard from speaking with people about anything, whatever topics she wants in throughout campus. Counsel, what if she wanted to have a table? Well, that's what gets back to the RSO policy at the Heritage Plaza area. Right, and so under that policy, Counsel, how many people have to agree with her viewpoint before she's allowed to speak? Isn't it five people? Your Honor, she needs to have an affiliation with an RSO, which is five or more persons who have registered with the university to utilize that part of campus for setting up a table. It's the tabling aspect that was the issue that day. She agrees that her content had nothing to do with actions of the university officials. No one took any action toward her because of any message. It was simply her setting up the table in the area that was reserved for others, and she was provided the information the week before on the RSO application, which laid out this guideline, and so she was aware of that and chose to set it up anyway. Well, can we infer some content-based discrimination based on Ms. Rouse's not allowing her to go to another area of campus? I mean, there's things that Ms. Rouse could have done, right? She had in the past said, okay, I'm going to let you stay here, but you need to register next time. She didn't do that here. She could have said, you could go over there without prior registration, and I'll let you do that, or she could have said, well, you have your phone right there with you. Just send me an email right now, and then you've fulfilled the registration requirement or the prior notice requirement, and you can go talk. So can we infer from those facts that there was some level or at least the possibility of viewpoint discrimination here? No, Your Honor. We can't infer any discrimination based on content or viewpoint. I don't agree with that. The actions of Ms. Rouse, she's not a defendant, so those don't play into the analysis here, but what the policy says is the area is she was trying to help Ashlyn and her group set up an RSO, and she was explaining that in the video. What she also said in her deposition was that if you identify with an RSO, then you have the ability to table in that area, and all of which she was explaining to her at the time. How is that not discrimination based on associational status? Because, Your Honor, the RSOs don't, it's not based on what your RSO is. It's based on that you are an identified organization of any type, and so that... Also, you told me that free speech was an individual right? Your Honor, but the reasonable restriction is limited to the groups in this particular area. It's similar to the Ball case. Mr. Ball was an individual who wanted to that venue. That's not a public forum. It's not even a limited public forum. Your Honor, in opening argument, counsel agrees that this is a limited forum of the Heritage Plaza. That's our position and has been, and that's why we pointed to the Ball case, and in that limited forum, the government has an opportunity to have a reasonable restriction, which is what they have here, limiting that area to specific groups and university departments. And so... Following up on Judge Gross' earlier question, this notion of a group versus an individual right, isn't this a classic Quetch 22 that Yossarian would love? She can't be out there as a group. She can't register as a group until she has five people, but she can't solicit people for a group until she's registered to be a group. Your Honor, Ms. Harvard was not prevented from the reason they were asked to move is because they set up a table in the area. She could recruit members for organization anytime, anywhere, and in fact, the video shows as they were sitting there and packing up the table and leaving, they were recruiting members right there in that area, so she was never prevented from speaking with anyone about anything. Counsel, you rely heavily on Bowman, so I want to focus on a couple of things with respect to Bowman. Bowman involves a non-student. Bowman involves somebody who would get 50 to 200 people, and Bowman involved crowd control issues. Here we have a student. Here we don't have crowd control issues. Here we have in the video, it shows just a few people there, but let's focus Bowman a little bit further. As a non-student, Bowman had no obligation to be on campus, but here Ms. Harvard has an obligation to attend class, and our students are required to attend certain functions of the university and therefore be on campus. Many universities have policies that require students to live on campus one, two, three, or even four years, and as such, if you're going to place a restriction on her right to speak anywhere on campus, and I recognize that that goes to facial versus an as-applied challenge, but tell me how it's not different for Bowman, where it's a non-student, than it is for here for Ms. Harvard, who's a student who's required to be on campus, and her only avenue for speech may be on campus, particularly if she's required to live there. Your Honor, Bowman is important for this reason. Judge Holmes relied upon that opinion for the qualified immunity analysis, and what we know from the Bowman decision is that the established principles from this court were that in a traditional, or in that case, a designated public forum, they went through the traditional forum analysis and determined that a permit requirement for Mr. Bowman was constitutional, and that was constitutional even with the additional requirement of three days notice to speak on campus, and so from a qualified immunity perspective, the Board of Trustees would reasonably interpret the Bowman decision to allow a permit on a campus, a college campus in Arkansas, and a three-day notice provision. And let's take that point and put it to the side, so let's focus on the First Amendment violation aspect of Bowman, not on the qualified immunity aspect. Your Honor, the court, Judge Holmes did not resolve the constitutional question. He did not make a finding that there was a constitutional violation, but if we were going to go down that road and make the analysis of constitutional action or violation, it comes through the ball analysis of reasonable restriction because we have a limited forum in this setting, so the traditional forum analysis applied in Bowman does not apply to Heritage Plaza. It is a reasonable restriction in content-neutral activity, so it's true. There was a decision of this court in Bowman, but it must go through the analysis applied in the Ball case. There was mention by counsel of the personal involvement of individuals here, and the record is clear that the administrators, Dr. Speck and Dr. Stripling, had absolutely no personal involvement with Ms. Hoggard on the day in question. They never spoke with her. They never interacted with her. She never made a request to schedule any free expression zone or anywhere else on campus, and she was never prevented from saying anything to anyone. Ms. Hoggard also agrees, that her content was not an issue here, and so there was no enforcement of any policy on the part of the defendants, Dr. Speck and Dr. Stripling. The same can be said for the Board of Trustees members. They took no action with respect to Ms. Hoggard, and the claim against them is set forth in the pleadings as one of the favors to repeal the policy, but as we've discussed here today, the Bowman decision would have outlined clearly established principles that are reasonable trustee would have believed when looking at Arkansas State's freedom of expression policy were in fact constitutional, and so they are allowed reasonable judgment in the application of the law, and that is why Judge Holmes found there was no clearly established right at the trial court level and granted summary judgment to the defendant to the board members based on qualified community. The board members are entitled to make reasonable judgments, and the law must be apparent on its face to them. That was not true based on Bowman. The other decisions cited by the appellants are not from the circuit. They're not binding. They would not have communicated to a reasonable trustee. You need to follow the law from some other circuit when the Eighth Circuit has already spoken on these issues for a college campus in Arkansas, and so we believe that the district court was correct in finding no personal involvement. The record supports that for Dr. Spak and Dr. Strickland. It also supports it for the board members. The court can affirm the judgment below for any reason supported by the record. And doesn't Minnesota majority that you cited in your brief reinforce these points with respect to Eighth Circuit law, particularly about selective enforcement of a standard of this policy? I'm sorry, Judge. Would you repeat the question? I didn't hear you. Doesn't Minnesota majority, Judge Benton's decision, quite recent decision, reinforce what you're saying about qualified immunity for a claim of selective enforcement of a standard of this policy? I believe it does, Your Honor. And I believe in this instance that you've got to have individual activity for each of the acted reasonably and relied upon the court's decisions, as Judge Holmes said, both Bowman and Ball to believe that the policies at Arkansas State were, in fact, constitutional. And the flip of that, as Judge Holmes said, the holding of this case, that the relevant authority, that being Bowman and Ball, did not place this constitutional question beyond a debate, such that every reasonable trustee would have known that their failure to repeal this policy was a constitutional violation. That decision should be affirmed. The board members are entitled to qualified immunity. Dr. Strickland and Dr. Spaff are entitled to summary judgment. And we respectfully request the court to affirm Judge Holmes' lengthy and detailed opinion. If there are no other questions, I thank you for the court's time. Thank you, counsel. Mr. Shanmugam. Thank you, Your Honor. I realize I've exhausted all of my rebuttal time, but I'd be happy to make three quick points if the court permits. I'll give you two minutes. Thank you, Your Honor. Real quickly, first of all, Judge Graz is absolutely correct that there's every reason to believe that this RSO-only policy, alleged policy, discriminates based on association and also discriminates based on viewpoint. And there's nothing in the speech policies themselves that prohibit or restrict enforcement officials' ability to discriminate based on associational status or viewpoint-based discrimination. That's why the policies themselves are unconstitutional under the First Amendment, and the board members who are responsible for maintaining them are personally responsible. Secondly, Judge Clark is absolutely correct. This is a perfect catch-22. All my client was attempting to do is follow the rules, set up a table and recruit members, recruit five signatures, so that she could continue to speak in that area on campus. And she was prevented from doing that, had the police called on her, and was sent away given no opportunity to continue to recruit members by school officials, exercising that umbrella of discretion, again, which is unconstitutional. And then third, as to Bowman, what my friends on the other side would like this court to do and claim that school officials are permitted to do is to completely ignore the robust consensus of authority in other circuits, completely ignore what this court said in Brown Counsel. Yes, Your Honor. Distinguish that. So that case falls in line with all the other cases that I mentioned earlier, is that the policy on its face is constitutional. There's nothing unconstitutional about the policy as written, and you can't hold responsible the people responsible for those policies. That's the same doctrine applied in respondeat superior cases. That's the same doctrine applied in deliberate different cases. So this policy is unconstitutional because it isn't written in the policy, that you can't discriminate based on association or viewpoint. What if somewhere else in the university's manual and policies, that prohibition is clear? Well, for one thing, a mere sentence that says, oh, by the way, you're not allowed to violate the Constitution, that is not enough to bribe discretion. That's what the Second Circuit said because a sentence like that, it's even worse. You just said the policy is unconstitutional because it doesn't say within its four corners, you can't viewpoint discriminate. No, Your Honor. All right. I can listen to the argument, but that's what you constantly say. What I hear you saying is not what I said. Well, I apologize, Your Honor, if I'm being unclear, and that's my fault. The argument that we are making... No, you're overstating your claim consistently, frankly. All right. Let me try to state it accurately then. What we are arguing is, look at the Second Circuit's decision in the Amidon case. The Amidon case explained that it's not enough, even if you were to write in the policy, you can't discriminate based on viewpoint discrimination. That was actually in the policy in Amidon. What the Second Circuit says, that's not enough. That's basically the government saying, trust us, we'll exercise our authority correctly. The U.S. Supreme Court rejected that argument, a very similar argument in U.S. v. Stevens, the annual crush video cases, because what it does... Were those facial attack cases? U.S. v. Stevens case? With all the ones you just rattled off. Right. The main case we're relying on for the unbridled discretion argument is Cox v. State of Louisiana. That's absolutely an as-applied challenge. The petitioner there had been convicted under a criminal statute. What the Supreme Court said in that case, is that exercise of unbridled discretion, regardless of whether you can prove viewpoint-based discrimination, that wasn't an issue. Wait a minute. Here we have a policy that doesn't say, that doesn't countenance or encourage content discrimination. We have it applied against a plaintiff who does not claim that it was applied against her for content discrimination reasons, and yet you're saying it's unconstitutional violation. That's not an as-applied challenge. Your Honor, it's a prior restraint imposed on all students, which prevented my client from not allowed to speak in the Heritage Plaza area, or in one of the free speech zones, because she hadn't gotten prior permission, and because the enforcement official exercised her discretion to refuse... I understand your position. Counsel, may I ask one final question? I would just, for clarification purposes, I want to clarify, is the person responsible for the audio tabling policy a defendant in this case? Yes, Your Honor. Ms. Spak is responsible for, and even Stripling themselves, both of them are responsible for determining whether or not speakers are allowed to speak outside the free speech areas. If you try to speak outside one of those areas, you have to go to Stripling or Spak, you have to get permission 72 hours in advance, and there are really no other restrictions on that. As a result, Rouse, or whoever else in her office came up with this unwritten RSO only policy, had the unbridled discretion to create that policy at a poll cloth, and then to enforce it against my client. And for that reason, the named defendants in this case are personally responsible for that unbridled exercise of discretion, and the arbitrary enforcement in granting some groups exceptions to allow them to continue speaking, but not granting my client an exception to allow her to continue speaking. By the way, it's clearly established constitutional law, and for all of these reasons, the state officials were not entitled to qualified immunity. This court should reverse, and this court should enter a summary judgment in favor of my client. Unless there are any further questions, I'm happy to rest on my brief, your honor. Thank you, counsel. It's been thoroughly briefed and well-argued. Thank you, your honor.